UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:26-CV-60177-SINGHAL/STRAUSS

JESUS DICURU ANTONETTI,

    Plaintiff,

vs.

MOCA LOGISTICS & INDUSTRIAL
SOLUTIONS, INC. and
GIANCARLO MOTTA,

    Defendants.

_____/

**RESPONSE IN OPPOSITION TO**
**DEFENDANT GIANCARLO MOTTA'S MOTION TO DISMISS**

Plaintiff, Jesus Dicuru Antonetti, through his undersigned counsel, hereby files this Response in Opposition to Defendant Giancarlo Motta's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction [ECF No. 26] (the "Motion") and respectfully requests that this Court deny the Motion, as follows:

**I. INTRODUCTION**

Defendant Motta seeks dismissal by portraying himself as a passive, out-of-state corporate officer with no meaningful connection to Florida. [ECF No. 26]. His characterization conflicts with the factually specific allegations in the Amended Complaint [ECF No. 23]. Other evidence, submitted herewith, unquestionably establishes Mr. Motta's active involvement in directing MOCA's Florida-based activities, subjecting him to personal jurisdiction herein. Mr. Motta's declaration carefully avoids addressing key jurisdictional facts, instead offering only generalized denials. As demonstrated below, Mr. Motta exercised operational control over Florida-based

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm

activities, including decisions affecting and directing not only Mr. Dicuru's employment, compensation, and work assignments, but also those of others, all while MOCA's corporate filings in Florida reflect his position as President of the company. Mr. Motta's purposeful, repeated acts directed at Florida establish a prima facie case of personal jurisdiction, and any resultant factual dispute precludes dismissal at this stage.

## II. RELEVANT FACTUAL BACKGROUND

1.      Mr. Dicuru filed this lawsuit under the Fair Labor Standards Act to recover the overtime wages he earned, but was not paid, during his employment with Defendants. [ECF No. 23.]

2.      Mr. Dicuru alleges that MOCA conducts business in Florida and that he performed work in Florida during his employment with MOCA from approximately June 2023 through November 24, 2025. [ECF No. 23 at ¶¶ 3, 13, 18].

3.      The Amended Complaint alleges that Defendant Giancarlo Motta was an "owner/officer/director/manager" of MOCA during the relevant period, "ran the day-to-day operations" of MOCA, was "responsible for significant operational decisions," and was "partially or totally responsible for paying Plaintiff's wages." [ECF No. 23 at ¶¶ 4, 10].

4.      In March 2025, MOCA announced the formal opening of its South Florida office, scheduled to commence operations on April 1, 2025. (Exhibits "4" and "5" to Exhibit "A").

5.      The announcement stated that the Florida office would serve as an operational base for the regional team and a business center to expand MOCA's commercial presence and operations in the State. (Exhibit "5" to Exhibit "A").

6. Mr. Dicuru received MOCA's internal communications newsletter announcing the opening of the South Florida office, which included a photograph depicting Mr. Dicuru standing with Mr. Motta inside the South Florida office. (Exhibit "4" to Exhibit "A").

7. MOCA's company materials, including email threads and internal communication newsletters, reflect that Mr. Motta was physically present in MOCA's South Florida office, alongside other members of the company's leadership team, to launch the Florida office in April 2025. (Exhibits "4" and "5" to Exhibit "A").

8. The South Florida office established MOCA's base operational team, including roles in REI (Receiving/Inventory), Quality Assurance, and Finance. (Exhibit "4" to Exhibit "A").

9. On April 10, 2025, Mr. Motta executed and signed an Application by Foreign Corporation for Authorization to Transact Business in Florida with the Florida Department of State. (Exhibit "6" to Exhibit "A").

10. Mr. Motta identified himself as "President" of MOCA and certified under penalty of law that the facts stated in the application were true in that filing. *Id.*

11. MOCA also listed a Florida registered agent with an address in Pembroke Pines, Florida (the address of its South Florida office, where Mr. Dicuru worked), and stated that MOCA first transacted business in Florida on April 1, 2025. *Id.*

12. On August 11, 2025, Mr. Motta sent an email to Vanessa Ocando to approve project execution for work being performed in Florida and staffing decisions about personnel to be hired and/or utilized for work at MOCA in Florida. (Exhibit "2" to Exhibit "A").

13. In that email chain, project personnel requested Mr. Motta's authorization to proceed with project sites in Florida, stating that they could not assign or schedule personnel without his approval. *Id.*

14.     Mr. Motta replied "Adelante" (i.e., "proceed" or "go ahead"), thereby authorizing the Florida-based project to proceed, and later confirmed operational details regarding how the Florida work would be carried out. (Exhibit "2" to Exhibit "A").

15.     Mr. Dicuru was included in the email chain and received Mr. Motta's directives regarding the Florida project. *Id.*

16.     On October 15, 2025, Mr. Motta sent an email directing Mr. Dicuru and another manager to be physically present in MOCA's South Florida office to support ongoing operational needs. (Exhibit "1" to Exhibit "A").

17.     Mr. Motta's email stated: "se requiere la presencia de Vanessa Ocando en la oficina de Miami desde el día de mañana" (i.e., "the presence of Vanessa Ocando is required in the Miami office starting tomorrow"), and "A su vez la presencia de Jesus Dicuru como coordinador de Bundles es necesaria tambien" (i.e., "likewise, the presence of Jesus Dicuru as Bundles coordinator is also necessary"). *Id.*

18.     The email appended to Exhibit "A" as Exhibit "1" confirmed that Mr. Dicuru was performing work in Florida at Mr. Motta's direction and that Mr. Motta exercised operational control over personnel assignments and work performed in Florida. *Id.*

19.     In addition to the corporate filings, email communications, and internal company materials described above, Plaintiff submits his sworn Declaration, attached as Exhibit "A," which substantiates Mr. Motta's direction, supervision, and control over Florida-based operations and Plaintiff's work."

20.     Throughout Mr. Dicuru's employment, Mr. Motta directed operational decisions affecting Mr. Dicuru's work assignments, compensation, and employment conditions, including

work performed in Florida, and was physically present in Broward County. [ECF No. 23 at ¶¶ 7-10; Exhibit "A" at ¶¶ 6-12].

21.     Mr. Dicuru further attests as follows regarding the interactions with, and the directives he received from, Mr. Motta:

a.  Mr. Motta directly supervised Mr. Dicuru's work and personally directed that Plaintiff perform work in Florida, including requiring his physical presence in the South Florida office. (Exhibit "A" at ¶ 5-6).

b.  Mr. Motta regularly communicated with Mr. Dicuru by phone and email regarding project assignments, staffing decisions, and operational instructions for Florida-based work. (*Id.* at ¶ 6).

c.  Mr. Motta directed Mr. Dicuru to focus on the sale of projects and required his presence in the South Florida office beginning the following day, while also directing staffing for those operations. (*Id.* at ¶ 7).

d.  Mr. Motta authorized the commencement of project work in Florida, including approving projects to proceed without a purchase order and directing how such projects would be structured, staffed, and executed. (*Id.* at ¶ 8).

e.  Mr. Dicuru and other Florida-based personnel could not proceed with significant work activities without Mr. Motta's direction or approval. (*Id.* at ¶ 9).

f.  Mr. Motta exercised authority over Mr. Dicuru's schedule, workload, and job responsibilities, including determining work location, duties, and project involvement. (*Id.* at ¶ 10).

g. Mr. Motta held formal authority to approve job roles, responsibilities, and operational structure, which governed Mr. Dicuru's working conditions and opportunities for work. (*Id.* at ¶ 11).

h. Mr. Motta was often physically present in Florida in connection with MOCA's operation, including the launch of the South Florida office, where Mr. Dicuru worked and interacted with him. (Exhibit "A" at ¶ 12).

22. Although contesting various "facts" in his Declaration [ECF No. 26-1], concrete evidence refutes Mr. Motta's rendition of events and establishes that he was not only physically present in Florida, but exchanged contemporaneous communications to actively direct and make operational decisions affecting Florida-based work and Florida-based employees, including Plaintiff. (Exhibits "1"-"6" to Exhibit "A").

23. Throughout Mr. Dicuru's employment with Defendants, he regularly and routinely worked over 40 hours per week but was not paid overtime wages at one and one-half times his regular rate. [ECF No. 23 at ¶¶ 33-34.]

### III. LEGAL STANDARD FOR PERSONAL JURISDICTION

Determinations about personal jurisdiction involve a two-step inquiry: (1) whether jurisdiction exists under Florida's long-arm statute, and (2) whether the exercise of jurisdiction comports with federal due process requirements. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). At the motion-to-dismiss stage, a plaintiff needs only to establish a prima facie case of personal jurisdiction based on the pleadings and any supporting evidence, and all reasonable inferences must be drawn in the plaintiff's favor. *Id.* The burden rests on the moving defendant to prove the absence of jurisdiction. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

"When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long arm statute in order to determine the existence of personal jurisdiction." *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623,626-27 (11th Cir. 1996). Florida's long-arm statute, Fla. Stat. §48.193(1)(a)(1), confers jurisdiction over any person who "operat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture" in Florida, provided that the plaintiff's cause of action arises from those business activities. When a federal court applies a state long-arm statute, it must construe the statute as would the state's supreme court. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

If the long-arm statute is satisfied, the Court must then determine whether exercising jurisdiction comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1350 (11th Cir. 2013). This requires a showing of "minimum contacts" between the defendant and the forum state such that the defendant "purposefully availed" himself of the privilege of conducting activities within Florida, thereby invoking the benefit of the forum state's laws. *Id.* at 1355.

Where a defendant submits an affidavit or declaration contesting jurisdiction, the burden shifts to the plaintiff to produce supporting evidence creating a factual dispute. *Skyhop Techs., Inc. v. Narra*, 58 F.4th 1211, 1219 (11th Cir. 2023). However, when the plaintiff's complaint and the defendant's affidavits conflict, the district court must construe all reasonable inferences in favor of the plaintiff. *Id.* Where such conflicts exist, and an evidentiary hearing has not been had, the Court cannot resolve credibility determinations or weigh evidence at the motion-to-dismiss stage, and any factual dispute must be resolved in favor of finding jurisdiction and precludes dismissal. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010).

When jurisdictional facts remain in dispute, courts routinely permit jurisdictional discovery before dismissing a defendant for insufficient contacts with the forum state. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999).

### IV. ARGUMENT

a.      **The Corporate Shield Doctrine Does Not Apply To This FLSA Case.**

Defendant argues that he cannot be subject to personal jurisdiction because he acted solely in his corporate capacity. [ECF No. 26]. That argument fails as a matter of law.

This case does not require piercing the corporate veil. Under FLSA jurisprudence, corporate officers with operational control are individually liable as "employers" based on the economic reality test, regardless of corporate form. *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). The FLSA imposes individual liability on any person who acts "directly or indirectly in the interest of an employer," and no veil-piercing analysis is required. *Id.*; *Wright v. Scales*, 2017 U.S. Dist. LEXIS 228561, at *17 (N.D. Ga. Dec. 14, 2017). Individual liability attaches based on functional control and participation in employment practices, not on extraordinary circumstances or corporate formalities.

The same functional control that creates FLSA liability also satisfies Florida's long-arm statute requirements. Here, Plaintiff alleges, and the record confirms, that Defendant Motta exercised operational control over Plaintiff's employment, including directing Plaintiff's work in Florida, approving Florida-based project execution and staffing decisions, and making compensation decisions. [ECF No. 23 at ¶¶ 4, 9-11] and (Exhibits "1," "2," and "3" to Exhibit "A"). These acts constitute personal participation in the alleged wage violations, not mere corporate decision-making. Mr. Motta was not a passive corporate officer but actively directed the

employment practices that allegedly violated the FLSA. The corporate shield doctrine, therefore, does not insulate him from personal jurisdiction.

b.     **Mr. Motta Is Subject To Personal Jurisdiction In Florida Under Florida's Long-Arm Jurisdiction Statute.**

Mr. Motta subjected himself to personal jurisdiction in Florida by engaging in the type of conduct to which Florida's long-arm jurisdictional statute extends. Florida's long-arm statute confers jurisdiction over any person who "operat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture" in Florida. Fla. Stat. § 48.193(1)(a)(1). The statute is interpreted broadly and reaches individual defendants who personally direct business operations within the state, not merely corporations. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1521 (11th Cir. 1985). By personally traveling to Florida to conduct business, communicating directly with Florida-based employees and agents, executing and authorizing corporate activities within the State, and exercising hands-on operational control over Florida operations, Mr. Motta personally directed Florida-based operations through operational control, communication with Florida employees, physical presence in the State, and corporate authorization activities. [ECF No. 23; Exhibits "1"-"6" to Exhibit "A"].

The allegations in the Amended Complaint and evidence submitted herewith establish that Mr. Motta exercised operational control over Florida-based work. [ECF No. 23 ¶¶ 7-10; Exhibits "1"-"6" to Exhibit "A"]. The activities identified in paragraphs 1 through 23, above, make clear that Mr. Motta was not a corporate officer who was totally disconnected from the activities occurring in Florida. *Am. Fim. Trading Corp. v. Baur*, 828 So. 2d 1071, 1075 (Fla. 4th DCA 2002). Rather, they establish that Mr. Motta was physically present at MOCA's office in Florida, and while out of state, actively directed, managed, and controlled the company's Florida-based

operations and personnel. His physical presence in Florida, combined with his direction and control of business activities in Florida, preclude Mr. Motta from avoiding this Court's jurisdiction. *Indus. Cas. Ins. Co. v. Consultant Assocs., Inc.,* 603 So. 2d 1355, 1357 (Fla. 3d DCA 1992).

Defendant's reliance on cases involving passive communications is misplaced. *Phelan v. Lawhon,* 299 So. 3d 853 (Fla. 3d DCA 2017); *Wendt v. Horowit*, 822 So. 2d 1252 (Fla. 2002). The communications and conduct at issue reflect Mr. Motta's affirmative direction and control of Florida-based operations. Mr. Motta did not merely communicate with Florida from afar; he directed personnel to be present in Florida, authorized Florida-based projects, was himself physically present in Florida, including during the launch of MOCA's Florida operations, and executed corporate filings establishing MOCA's authorization to conduct business in Florida. These are operational acts purposefully directed at the forum state — not random, fortuitous, or attenuated contacts.

Mr. Motta's Florida-directed conduct constitutes purposeful availment to Florida's laws and establishes a direct nexus between his Florida activities and Mr. Dicuru's FLSA claim. The claim arises directly from the employment relationship Mr. Motta directed and controlled through his operational decisions affecting work performed in Florida. Such conduct satisfies both Florida's long-arm statute and federal due process requirements. *Louis Vuitton*, 736 F.3d at 1350.

Florida's long-arm statute reaches individual defendants who personally direct business operations within Florida, regardless of whether those actions were undertaken in a representative capacity. *Young v. Air Canada,* 455 So. 2d 1102, 1104 (Fla. 4th DCA 1984). Here, Mr. Motta personally directed operational decisions, authorized project execution, required the physical

presence of employees including Mr. Dicuru in Florida, and was himself physically present in the State in connection with MOCA's Florida operations. [ECF No. 23 ¶¶ 7-10].

The corporate shield doctrine generally provides that acts performed by a corporate officer in his official capacity are not attributable to the individual for purposes of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 628 (11th Cir. 1996). However, the doctrine does not protect individuals who personally participate in tortious or statutory violations, even when those acts were undertaken in a representative capacity. *Doe v. Thompson*, 620 So. 2d 1004, 1006 n.1 (Fla. 1993). The Florida Supreme Court has expressly held that the corporate shield doctrine does not prevent jurisdiction over a nonresident who commits a tortious act while in Florida, even if acting on behalf of a corporation. *Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012). Similarly, the Eleventh Circuit recognizes that individuals who personally direct or participate in statutory violations cannot avoid jurisdiction merely because those acts were undertaken in a corporate capacity. *Louis Vuitton*, 736 F.3d 1339.

Critically, this case does not require piercing the corporate veil. Under FLSA jurisprudence, corporate officers with operational control are individually liable as "employers" based on the economic reality test, regardless of corporate form. *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986). The FLSA imposes individual liability on any person who acts "directly or indirectly in the interest of an employer," and no veil-piercing analysis is required. *Id.*; *Wright v. Scales*, 2017 U.S. Dist. LEXIS 228561 (N.D. Ga. Dec. 14, 2017). Individual liability attaches based on functional control and participation in employment practices, not on extraordinary circumstances or corporate formalities.

The same functional control that creates FLSA liability also satisfies Florida's long-arm statute requirements. Here, Plaintiff alleges and the record confirms that Mr. Motta exercised operational control over Mr. Dicuru's employment, including directing Plaintiff's presence in Florida, approving Florida-based project execution and staffing decisions, and making compensation decisions. [ECF No. 23 at ¶¶ 4, 9-11; Exhibits "B," "D," and "E"]. These acts constitute personal participation in the alleged wage violations, not mere corporate decision-making. Mr. Motta was not a passive corporate officer but actively directed the employment practices that allegedly violated the FLSA. The corporate shield doctrine, therefore, does not insulate him from personal jurisdiction.

c. **Exercising Jurisdiction Over Mr. Motta Comports with Due Process.**

Having established that Florida's long-arm statute authorizes jurisdiction, the Court must determine whether exercising jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Kitroser v. Hurt,* 85 So. 3d 1084, 1087 (Fla. 2012). This constitutional standard requires that Mr. Motta to have "minimum contacts" with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Due Process analysis focuses on whether the defendant "purposefully availed" himself of the privilege of conducting activities within Florida, thereby invoking the benefits and protections of Florida law. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The defendant's contacts must be created by the defendant himself and cannot be random, fortuitous, or attenuated. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Mr. Motta's Florida contacts satisfy the purposeful availment standard. First, Mr. Motta signed corporate documents authorizing Florida business operations. On April 10, 2025, he

executed an Application by Foreign Corporation for Authorization to Transact Business in Florida, identifying himself as President and certifying the accuracy of the filing under penalty of law. (Exhibit "6" to Exhibit "A"). This was not a ministerial act but a deliberate decision to invoke Florida's legal framework to conduct business within the state.

Second, Mr. Motta attended MOCA's South Florida office opening, demonstrating physical presence and commitment to Florida operations. Company materials confirm he was present in Florida alongside company leadership, including during the launch of MOCA's South Florida office in April 2025. (Exhibit "4" to Exhibit "A"). His physical presence in Florida in connection with establishing operational facilities demonstrates purposeful engagement with the forum, not accidental contact.

Third, Mr. Motta personally directed Florida employees regarding their work. On October 15, 2025, he ordered Plaintiff to be physically present at MOCA's South Florida office to support ongoing operational needs. (Exhibit "1" to Exhibit "A"). This directive was not a passive communication but an exercise of operational authority determining where and when a Florida-based employee would work.

Fourth, Mr. Motta made operational decisions about Florida-based projects. On August 11, 2025, he approved project execution and staffing decisions for work performed in Florida, authorizing the project to proceed and confirming operational details. (Exhibit "2" to Exhibit "A"). These decisions directly affected how Florida operations were conducted and staffed.

Fifth, Mr. Motta exercised authority over Florida employees' terms and conditions of employment. The Amended Complaint alleges he ran day-to-day operations, made significant operational decisions, and was responsible for paying Plaintiff's wages. [ECF No. 23 at ¶¶ 7-11].

These allegations, supported by documentary evidence, demonstrate ongoing operational control over Florida-based employment activities.

These contacts demonstrate a deliberate decision to conduct business in Florida, not accidental or attenuated connections. Mr. Motta chose to expand corporate operations into Florida, establish a Florida office, hire Florida employees, and personally oversee Florida projects. These purposeful choices mean he could reasonably anticipate being haled into a Florida court for claims arising from those Florida-directed activities. *Vermeulen v. Renault. U.S.A. Inc.,* 985 F.2d 1534, 1546 (11th Cir. 1993).

The exercise of jurisdiction is also reasonable. Mr. Motta has extensive contacts with Florida stemming from his operational decisions. Florida has a strong interest in adjudicating wage claims arising from employment within the state. Plaintiff has a significant interest in litigating where he worked and where the alleged violations occurred. The interstate judicial system's interest in efficiency favors resolution in the forum where the employment relationship was centered and where witnesses and evidence are located. *Manuel v, Convergys Corp.,* 430 F.3d 1132, 1133 (11th Cir. 2005). Given Mr. Motta's purposeful and substantial contacts with Florida, requiring him to litigate here does not offend traditional notions of fair play and substantial justice. *Tufts v. Hay*, 977 F. 3d 1204 (11th Cir. 2020).

d.      **<u>At Best, Mr. Motta's Declaration Creates A Factual Dispute.</u>**

When a defendant submits a declaration in support of a motion to dismiss for lack of personal jurisdiction, and the plaintiff presents evidence to the contrary, all conflicts must be resolved in the plaintiff's favor. *Vision Media TV Grp., Ltd. Liab. Co. v. Forte*, 724 F. Supp. 2d 1260, 1264 (S.D. Fla. 2010). At this stage, the Court cannot resolve credibility determinations or weigh evidence, and any factual disputes must be resolved in favor of finding jurisdiction. *GS*

*Holistic, LLC v. SAM 2016 Inc.,* 2023 LX 135498 at *2 (S.D. Fla. Apr. 12, 2023). Where conflicts between declarations and evidence exist, dismissal is inappropriate and jurisdictional discovery is warranted. *Bernardele v. Bonorino,* 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009); *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999).

Mr. Motta's declaration creates precisely such conflicts. He declares that he has "not personally engaged in any substantial activity within the State of Florida" and has "not personally operated, conducted, or engaged in business in Florida." [ECF No. 26-1 at ¶8.] Yet contemporaneous emails show Mr. Motta personally directed Mr. Dicuru to report to the South Florida office for operational needs, stating "la presencia de Jesus Dicuru como coordinador de Bundles es necesaria tambien" (i.e. "The presence of Jesus Dicuru as Bundles Coordinator is also necessary"). (Exhibit "1" to Exhibit "A".) These are not the acts of someone with no substantial Florida activity.

Mr. Motta further declares that "all activities, operations, management, transactions, and otherwise wage-related decisions were conducted by Moca's human resources department." [ECF No. 26-1 at ¶7.] Yet the record shows Mr. Motta personally approved project execution and staffing decisions for Florida-based work, with project personnel expressly stating they could not assign or schedule personnel without his approval. (Exhibit "D"). When Mr. Motta replied "Adelante" to authorize the Florida project, he was not delegating to HR; he was exercising direct operational control.

Mr. Motta's declaration also avoids addressing key jurisdictional facts, including MOCA's Florida office, Mr. Motta's physical presence in the State, and his signing of Florida corporate filings as President. (Exhibits "4," "5," and "6" to Exhibit "A"). These omissions, coupled with

Mr. Motta signing emails as "Commercial Director" while describing himself only as "President" in his declaration, underscore the self-serving and incomplete nature of his sworn statements.

At best, Mr. Motta's declaration disputes the facts alleged in the Complaint and supported by documentary evidence. A motion to dismiss that disagrees with facts alleged in a Complaint and is contradicted by record evidence is a concession that discovery, not dismissal, is required. *See St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). These factual disputes preclude dismissal and, at minimum, require jurisdictional discovery to resolve Mr. Motta's actual role in directing Florida operations.

e. **Jurisdictional Discovery Would Be Appropriate Before Dismissal.**

If the Court believes additional factual development is necessary to resolve the jurisdictional question, the appropriate remedy is jurisdictional discovery, not dismissal. *Bernardele v. Bonorino,* 608 F. Supp. 2d 1313, 1321 (S.D. Fla. 2009). Dismissal at this stage would be premature given the factual disputes identified above between Mr. Motta's declaration, and the allegations of the Amended Complaint and Mr. Dicuru's evidence produced herewith. *Id.*

District courts have discretion to permit jurisdictional discovery when a plaintiff has alleged sufficient facts to show personal jurisdiction exists, and additional discovery is needed to fully develop the record. *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 730-31 (11th Cir. 1982); *Funez v. CMI Leisure Mgmt., Inc.*, 482 F. Supp. 3d (S.D. Fla. 2020); *VPR Brands, LP v. Zaydan Innovations Inc.*, 2025 WL 673845 (S.D. Fla. Feb. 25, 2025). Jurisdictional discovery is specifically appropriate when, as here, the defendant's declaration conflicts with documentary evidence. *Id.*

If the Court does not deny Mr. Motta's Motion to Dismiss Plaintiff's Amended Complaint for Lack of Personal Jurisdiction, then Mr. Dicuru seeks the opportunity to conduct jurisdictional

discovery, including through Requests for Production, Interrogatories, and depositions limited to the jurisdictional issues to explore topics that would include the following:

a. Communications between Mr. Motta and Mr. Dicuru relating to establishing a base of operations in Florida, positions and staffing, functions to be performed, and the scope of those Florida-based activities, and the anticipated duration and purpose of those operations;

b. Communications between Mr. Motta and other employees in relation to establishing a base of operations in Florida, positions and staffing, functions to be performed, reporting structure, work they are to perform, and oversight of Florida-based personnel and operations;

c. Mr. Motta's authority and decision-making role in Florida operations;

d. Records and reports regarding Mr. Motta's physical presence in Florida for MOCA and his work-related activities and decisions made while in Florida; and

e. Organizational charts and corporate documents defining Mr. Motta's role and responsibilities during the period at issue in this lawsuit.

Permitting Mr. Dicuru to engage in and obtain jurisdictional discovery would enable him to address any question about the propriety of exercising jurisdiction over Mr. Motta and provide a more complete record to assist the Court in resolving any factual dispute to facilitate the decision to exercise personal jurisdiction over Mr. Motta. *Funez v. Cmi Leisure Mgmt., Inc.,* 482 F. Supp. 3d 1252, 1255 (S.D. Fla. 2020).

### V. CONCLUSION

For the foregoing reasons, Mr. Dicuru requests that the Court either deny Mr. Motta's Motion or permit him to conduct jurisdictional discovery before granting it.

Respectfully submitted this 24th day of April 2026,

s/Katelyn Schickman, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
Katelyn Schickman, Esq. (1064879)
katie@fairlawattorney.com
FAIRLAW FIRM

135 San Lorenzo Avenue, Suite 770
Coral Gables, FL 33146
Tel:     305.230.4884
*Counsel for Plaintiff*