UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:26-CV-60177-SINGHAL/STRAUSS

JESUS DICURU ANTONETTI,

       Plaintiff,

vs.

MOCA LOGISTICS & INDUSTRIAL
SOLUTIONS, INC. and
GIANCARLO MOTTA,

       Defendants.

_____/

## DECLARATION OF JESUS DICURU ANTONETTI

I, Jesus Dicuru Antonetti, make the following sworn declaration pursuant to 28 U.S.C. § 1746 and declare under penalty of perjury, as follows:

1.      My name is Jesus Dicuru Antonetti.

2.      I make this Declaration based upon my personal knowledge.

3.      I am over the age of 18, sui juris, and competent to testify as to the matters contained in this Declaration.

4.      MOCA Logistics & Industrial Solutions, Inc. ("MOCA") and Giancarlo Motta ("Mr. Motta") employed me from approximately June 2023 through November 2025.

5.      I worked under Mr. Motta throughout my employment with MOCA, and he regularly and routinely supervised my work for MOCA.

6.      Mr. Motta regularly and routinely directed me to perform work in Florida, including requiring my physical presence in MOCA's South Florida office, and exercised ongoing supervisory control over my Florida-based work through phone calls, emails, and other communications regarding project assignments, staffing, and operations.

1

7.     For example, on or about October 15, 2025, Mr. Motta sent an email to MOCA's Florida personnel, including myself, directing that certain operational priorities be implemented in connection with MOCA's Florida business, and requiring the physical presence of personnel, including myself, at MOCA's South Florida office beginning the following day. (Exhibit "1"). This instruction directly impacted my work and required my physical presence in Florida in connection with MOCA's operations. (Exhibit "1").

8.     Mr. Motta regularly and routinely exercised authority over MOCA's Florida operations by authorizing the commencement of projects, approving work to proceed, and directing personnel assignments for those projects. For example, on August 11, 2025, MOCA personnel sought Mr. Motta's approval to begin a project in Florida prior to the issuance of a purchase order, and Mr. Motta authorized the project to proceed. This type of approval was necessary for MOCA's Florida projects to be executed and directly impacted the work that I and other personnel performed in connection with MOCA's Florida operations. (Exhibit "2").

9.     Based on my experience at MOCA, personnel working on operations in Florida generally relied on decisions and approvals from Mr. Motta in order to proceed with certain projects and operational activities.

10.    Throughout my employment with MOCA, Mr. Motta exercised authority over my schedule, workload, and job responsibilities in Florida, as his decisions and directives influenced these aspects of my work. For example, Mr. Motta:

  a.   Required my physical presence in the South Florida office. (Exhibit "1").

  b.   Instructed that I focus my work in Florida on the sale of projects and related operational efforts. (Id.)

  c.   Authorized the commencement of Florida projects and determined how and when such work would be structured and managed, including staffing and operational execution. (Exhibit "2").

11.    Mr. Motta was involved in decisions affecting my compensation and working conditions because he held formal authority within the company to approve job roles (including

2

mine), responsibilities, and operational structure, which in turn governed the scope of my duties and opportunities for work. (Exhibit "3").

12.     Mr. Motta was often physically present in Florida in connection with his role as the President of MOCA, including for the launch of its office in Pembroke Pines, Florida (Exhibit "4"), where I am depicted in the photograph published in MOCA's internal communications newsletter from that event, standing to the left of Mr. Motta.

13.     MOCA, through Mr. Motta and other senior leadership, established and operated a physical office in Pembroke Pines, Florida that served as a base of operations. Mr. Motta was involved in the launch of this office and in activities connected to its operations, including through his physical presence in Florida in connection with MOCA's business. (Exhibit "5").

14.     MOCA was authorized to conduct business in the State of Florida during the relevant period, and Mr. Motta executed corporate filings in his capacity as President in connection with that authorization. (Exhibit "6").

15.     My claims in this lawsuit arise from the work I performed for Defendants, including work performed in Florida under Mr. Motta's direction and control.

## DECLARATION

By my signature below, I execute this declaration in Broward County, Florida, and declare under penalty of perjury that the foregoing is true and correct.

By: _____
Jesus Alberto Dicuru Antonetti (Apr 24, 2026 17:11:58 EDT)
JESUS DICURU ANTONETTI

Apr 24, 2026
_____
DATE

## INTERPRETER'S ACKNOWLEDGEMENT

3

I, Juan Aragon, certify that on April 24, 2026, I accurately translated the foregoing Declaration for JESUS DICURU ANTONETTI, and that he stated that he fully understood its contents.

*Juan Aragon*
Juan Aragon (Apr 24, 2026 15:03:27 MDT)
_____

Interpreter's Signature

Coral Gables, Florida | Detroit, Michigan
FairLaw Firm